# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SAMUEL R. JAHNKE AND SONS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 10-4098-JTM |
| BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion for a protective order (Doc. 18) and plaintiffs' motion for a protective order (Doc. 30). The rulings are set forth below.

## Background

Highly summarized, this is an action against an insurance company to recover money for unpaid medical bills incurred by an insured individual. The genesis of this lawsuit is a group health insurance policy issued by Blue Cross and Blue Shield of Kansas to Samuel Jahnke and Sons' "farming enterprise" in 2005. The initial policy apparently provided

coverage for maternity care, a coverage the Jahnkes decided to drop in 2008.[1]  Plaintiffs

allege that they requested the "exact same coverage less maternity benefits and the Group

was issued a new policy on September 5, 2008."

In April 2009, Samuel Jahnke experienced stroke symptoms and was taken to a

hospital where he was diagnosed with a brain tumor.  Surgery to remove the tumor was

performed on April 23, 2009.  Defendant denied coverage for that surgery because defendant

imposed a 240-day waiting period on brain tumors when it reissued the policy in September

2008.  Plaintiffs contend that (1) defendant violated K.S.A. 40-2209(a)(8) by issuing a new

policy which failed to give them credit for their prior coverage, and (2) the terms of the

policy violate other Kansas insurance statutes.


## Defendant's Motion for a Protective Order (Doc. 18)

This action was originally filed in state court on March 8, 2010 and both sides served

discovery requests.  Plaintiffs responded to defendant's discovery requests and defendant

then removed the case to federal court, arguing that the discovery responses revealed that the

case was a claim for ERISA benefits.  Defendant now moves for a protective order excusing

it from answering *plaintiffs'* discovery requests.  For the reasons set forth below, the motion

for a protective order shall be DENIED.

Defendant argues:  "Because this is an ERISA case, the scope of discovery should be

---

[1]

The farming enterprise apparently involved Samuel Jahnke and his two adult sons.
The Jahnkes collectively decided "their families were complete" and that maternity
coverage was unnecessary.  Samuel Jahnke is now deceased.

restricted to the applicable ERISA plan document and evidence that was before the plan administrator when the benefit determination was made ('Administrative Record')." Doc. 18, p. 1. Defendant also contends that (1) the administrative record, (2) documents related to Jahnkes' health care coverage from 2005 through 2008, and transcripts of telephone conversations between the Jahnkes and defendant's enrollment representative Michelle Gross have been produced; therefore, all relevant evidence has been produced and additional discovery is unnecessary.

The problem with defendant's argument is that this is not a "typical" ERISA lawsuit seeking review of a plan administrator's determination that benefits are not recoverable under the terms of the plan. Rather, plaintiffs contend that (1) defendant delivered a new policy with terms that violate Kansas insurance statutes and (2) contrary to the Jahnkes' narrow request concerning maternity benefits, defendant sent a new policy that also contained additional time constraints and exclusions. That this case is not a "typical" ERISA action is further illustrated by (1) defendant's initial issuance of discovery requests when the case was pending in state court and (2) defendant's more recent issuance of a deposition subpoena to the Jahnkes' accountant. Defendant's citation to "typical" ERISA cases and statements concerning the "general" scope of discovery are inapposite.

Defendant's motion is also problematic given the nature of the plaintiffs' written discovery requests. For example, Interrogatory No. 1 requests the name, address and position of any individual assisting in responding to the written discovery requests and the documents he/she considered in answering the discovery requests. This is a standard interrogatory and defendant has not shown that responding to this request is unduly burdensome, oppressive,

or expensive. Further, the requested information is relevant because, at a minimum, the response allows plaintiffs to evaluate the completeness of the "administrative record" to which defendant refers in conclusory terms. Similarly, plaintiffs' Request for Admission No. 1 asks defendant to admit that Bates-stamped Doc. 000171 through 000210 is a true and accurate copy of the defendant's policy issued to plaintiffs. Why defendant is unable to admit or deny that the policy in plaintiffs' possession is a "true and accurate copy" is not explained. The followup Interrogatory and production request merely seek an explanation if defendant denies that the policy is a "true and accurate copy" of the policy. This court declines to issue a protective order addressing simple, threshold issues concerning the authenticity of key documents in the lawsuit.[2]

A number of other written discovery requests seek similar information concerning who participated in the decision to deny the claim and what documents were considered. The time to answer these interrogatories and production requests would have been considerably less than the time spent moving for this protective order. Under the circumstances, defendant has not carried its burden of persuasion for the issuance of a protective order.

Finally, plaintiffs' written discovery requests include questions concerning the amount defendant actually paid and how much defendant would have paid if the claim had not been denied. These discovery requests are particularly relevant because they go to the monetary damages plaintiffs will recover if they are successful on their claims in this case. Under the circumstances, defendant's motion for a protective order shall be denied.

---

[2]

    It is less than clear whether defendant gave thoughtful consideration to the individual discovery requests served by plaintiffs.

**IT IS THEREFORE ORDERED** that defendant's motion for a protective order **(Doc. 18)** is **DENIED.** Defendant shall answer the written discovery requests on or before **May 3, 2011.**[3]

### Plaintiffs' Motion for a Protective Order (Doc. 30)

Despite arguing above that the scope of discovery "in this ERISA case" is limited to the "administrative record" and that a protective order should be entered, defendant recently served a deposition subpoena on plaintiffs' accountant to secure information which might support defendant's motion for summary judgment. Plaintiffs move for a protective order, arguing that the discovery should not be permitted if defendant is correct in its assertion that discovery "beyond the administrative record" is not permissible in this case.

As noted above, defendant's recent deposition subpoena highlights the court's earlier observation that this case is not a "typical ERISA claims" case. However, plaintiffs' argument that the deposition should not proceed if their discovery is not permitted is moot. The court denied defendant's motion for a protective order and required defendant to answer plaintiffs' written discovery requests. Accordingly, plaintiffs' motion for a protective order is DENIED.

**IT IS THEREFORE ORDERED** that plaintiffs' motion for a protective order and

---

[3] The ruling concerning defendant's motion for a protective order is limited to the written discovery requests submitted for the court's consideration and the court expresses no opinion concerning any future discovery requests by plaintiffs. Whether additional discovery is warranted turns, as it does in every case, on relevance and the issues in the case. Any future motions shall address the specific discovery requests in detail.

to quash subpoena **(Doc. 30)** is **DENIED.**  Counsel shall confer and the tax record production/deposition shall be completed on or before **May 18, 2011.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 18th day of April 2011.


S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge