IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAMUEL R. JAHNKE AND SONS, INC., AND
MARY K. JAHNKE , AS EXECUTOR FOR THE
  ESTATE OF SAMUEL R. JAHNKE, DECEASED,

        Plaintiff,

       vs.               Case No. 10-4098-JTM

BLUE CROSS/BLUE SHIELD OF KANSAS,
        Defendant.

MEMORANDUM AND ORDER

This is an action by the plaintiff Samuel R. Jahnke and Sons, Inc., and Mary K. Jahnke, as executor for the Estate of Samuel R. Jahnke, seeking recovery against defendant Blue Cross, for medical expenses associated with a 2008 insurance policy issued to Samuel Jahnke. Jahnke & Sons is a family farming enterprise that employed Samuel Jahnke, his wife Mary, and their sons Matthew and Eric. The suit arises from Blue Cross's denial of medical expenses associated with Samuel Jahnke's 2009 surgery to remove a brain tumor.

The plaintiffs originally filed their Petition in Geary County, Kansas District Court, alleging that the policy issued by Blue Cross violated Kansas law, specifically the provisions of K.S.A. 40-2209 governing policy renewals and restrictions on waiting periods. Blue Cross removed the action to this court, and has moved for summary judgment, alleging that the state action is precluded by ERISA, and that in any event K.S.A. 40-2209 is inapplicable to the present action.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.

56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988).  The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The following findings of fact exclude requested factual findings which are merely the argument of counsel, or which are not supported by particularized reference to the evidentiary record, as required under D.Kan.R. 56.

In addition, the court notes that, after Blue Cross submitted its Reply in support of its summary judgment motion, the Jahnkes filed a surreply (Dkt. 36) without prior leave of court, prompting both a Motion to Strike (Dkt. 37) by Blue Cross, and a belated Motion for Leave  (Dkt. 40), seeking permission to file the Surreply.

2

Surreplies are of course disfavored, and the court has repeatedly indicated that parties seeking to submit such pleadings must obtain prior leave of court. However, given the additional discovery permitted by the United States Magistrate Judge (Dkt. 33), the court finds that a supplemental pleading is appropriate, and grants the requisite relief. The court also notes Blue Cross's request, in its Motion to Strike, for leave to file a responsive pleading in the event that the surreply is granted. This request is granted, and the defendant is granted leave to file the proposed Supplemental Brief (Dkt. 37, Exh. 1) as a separate pleading.

Given the submission of what will be five rounds of briefing, the court specifically discourages any request for reconsideration, and directs that any such motion shall be limited to no more than five double-spaced pages in length, and shall not reargue any matter which was advanced in any of the pleadings currently before the court. (Dkt. 16, 17, 32, 35, 36, 37, 40, 41). The non-movant may submit a Response of equivalent length; no Reply or further briefing shall be submitted.

***Findings of Fact***

On September 1, 2008, Blue Cross issued Samuel Jahnke an individual medical insurance policy.

Blue Cross first contends that the payments on the 2008 policy were made by Jahnke and Sons, not Samuel Jahnke. In support of this contention, Blue Cross cites the interrogatory responses of the plaintiffs, which indicate that Jahnke & Sons purchased medical insurance for its employees through Blue Cross, and that the corporation paid the premiums for its employees' medical insurance directly to BCBS. In their Response, the plaintiffs deny the requested factual finding. They state that the original interrogatory responses by the Jahnkes were erroneous, and rely on the affidavit testimony of the accountant for Jahnke and Sons, Gary T. Edwards.

According to Edwards, although the premiums were sent by the corporation, this merely occurred at his own request in order to aid in tracking the amount spent on insurance for purposes of the individual tax returns of the Jahnkes. Edwards further avers that the premiums were all "paid

with after tax dollars," and "were treated as distributions by the company and not as an expense."

((Dkt. 24, Exh. 3, at 2). Edwards states:

> The premiums were treated as a distribution for tax purposes. No portion of the premiums was deducted by the company as an expense. The premiums were deducted by each individual on their respective individual income tax returns.
>
> ....
>
> [T]he individuals [were not] reimbursed for any portion of the premiums as a benefit by the company. All premiums were used to determine the individual income tax liability of the shareholder on their personal tax returns.

(*Id.*)

In its Reply, Blue Cross argues that the admissions by the plaintiffs in their original interrogatory responses are binding, and that the Edwards affidavit should be disregarded in light of those earlier statements, and in light of Edwards' subsequent deposition. In particular, Blue Cross cites Edwards' deposition statements that the premium payments were divided equally among the shareholders (even though the actual premiums to individual shareholders were not equal, the corporation made payments "out of the corporate cash," the W-2 Forms of the shareholders did not separately list the premiums, and because the shareholders did not pay taxes on the premiums because they took self-employed health insurance deductions of the total amount of premiums paid during the year, divided equally among the shareholders. (Edwards dep. at 31, 40, 52, 56).

The court finds that a material issue of fact exists as to the source of the premium payment. While the interrogatory responses and other evidence cited by Blue Cross present substantial, and potentially compelling, evidence that the premium payments were in fact made by Jahnke & Sons, they do not compel such a conclusion, and on summary judgment the court may make not any finding of fact which is not supported beyond a reasonable doubt.

The court will not disregard Edwards' testimony. *See Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 633 (10th Cir. 2008) (court may disregard as affidavit directly contradicting prior deposition testimony). Here the original interrogatory responses were not submitted by Edwards. Edwards, a Certified Public Accountant, was the financial advisor of Jahnke family prior to and

4

during the events in question. Blue Cross has not demonstrated that Edwards has any financial interest in the outcome of this litigation.

Edwards' deposition testimony is consistent: Jahnke & Sons made the premium payments "as distributions," and not as "any kind of expense deductions." (Edwards dep. at 17). The premiums were not listed as expenses on the corporation's tax returns. (*Id.*) Instead, the premium payments were "recorded as a disbursement in [Janhke & Sons'] books of record." (*Id.* at 32). The premium payments were made to "flow through as a distribution from the corporation to the owners." (*Id.*, at 19). Edwards explained that he specifically asked that premium payments be sent in this way to aid him in preparing the individual tax returns, by giving him "a way for me to have access to the information at year-end without them having to delve into their individual checkbooks." (Id. at 42). The individual tax returns for the family members included the premium payment distributions. (*Id.* at 46-48, 63).

Jahnke & Sons created and maintained records of the payments it made on behalf of its employees.

According to Blue Cross, Jahnke's daughter-in-law, Kristel Jahnke, acted as a liaison between Jahnke & Sons' employees and BCBS by investigating health insurance plans for Jahnke & Sons and reporting back the information she received from BCBS. However, it is unclear whether Kristel Jahnke had a specific or formal role in these communications, other than sometimes speaking with Blue Cross personnel on the telephone. Blue Cross stresses that the Billing Notices sent to the corporation identify Kristel Jahnke as "group leader" on the account, but other written communications were sent to each of the Jahnkes as individuals.

In their Response, the plaintiffs state that they cannot admit to the existence of such a policy "[u]ntil Defendant explains the existence of [another] insurance policy," which was also issued to Jahnke. (Dkt. 24, at 2). However, this policy was cancelled on September 1, 2008, and never went into effect. While the Jahnkes speculate that such a cancellation might be evidenced by a formal cancellation document, they have produced no evidence that this would likely be the case. The

evidence before the court indicates that the September 1, 2008 policy was an individual policy, that it was issued with an effective date of September 1, 2008, and that it was specifically agreed to by Samuel Jahnke, as evidenced by his signature.

According to Blue Cross, Samuel Jahnke's Policy was individually underwritten, meaning Blue Cross specifically considered Jahnke's individual health risk. Group policies, on the other hand, are not individually underwritten; rather, they are issued on the basis of underwriting assumptions pertaining to the general health of a group of people, and no individual person's health risk is evaluated. Therefore, major differences exist between individual and group policies, including the premiums charged.

The Jahnkes argue, however, that the policy was intended to be a group policy. They note that the policy, and subsequent Explanation of Benefits forms, were issued under the "group name" of "Samuel R. Jahnke & Sons," and assigned "Group No. M008395." They also cite a Health Route Sheet indicating that Blue Cross viewed this policy as a health insurance rollover, and the package code was First Choice Business and not First Choice Individual.

The court finds that the policies issued in 2008 were individual, not group policies. Blue Cross supplies evidence showing that the group number was used for billing purposes only, and that evidence clearly shows that policy issued to Samuel Jahnke was an individual policy, with an effective date of September 1, 2008. (Dkt. 17-4, at 6). The Jahnkes were specifically informed that the new policies were individual policies, with lower premiums. It is uncontroverted that the premiums for Samuel Jahnke's policy were calculated based on an individual policy.

The Policy included a 240-day waiting period for the treatment of tumors or growths:

Waiting Periods. The Insured must have had continuous coverage for 240 days dating from the date this coverage becomes effective for the conditions named below before benefits are available.

1. Removal of tonsils and or adenoids.
2. Treatment of tumors or growths.
3. Treatment for a hernia.
4. Treatment for conditions of the gall bladder, rectum, or genito-urinary tract.

Blue Cross, citing the Enrollment Confirmation Form signed by Samuel Jahnke, contends that Jahnke expressly agreed to this waiting period on August 22, 2008, before the effective date of the Policy. The Jahnkes argue that this 2008 policy was a rollover policy, and that the effective date of the policy should therefore be September 1, 2005, when the original policy took effect.

Under the 2008 policy, benefits are paid "upon receipt of proper written proof of loss."

On April 19, 2009, Samuel Jahnke underwent an operation to investigate a potential brain tumor.

Blue Cross denied the claim as excluded under the Policy's 240-day waiting period for the treatment of tumors or growths.

On March 8, 2010, after exhausting appeals under the Policy, the Jahnkes filed a Petition against Blue Cross in the District Court of Geary County, Kansas. As noted above, Blue Cross removed the action to this court.

In addition to disputing some of the facts presented by Blue Cross, the plaintiffs' Response also includes a numbered list of 15 paragraphs which it lists as "[s]ome of the genuine issues of material fact that will deserve our attention during the remaining discovery." (Resp. at 5). Blue Cross correctly observes that, if this list was intended as a Statement of Additional Fact under Rule 56(d), the list is almost entirely without evidentiary support. Rather, in most instances they are simply argument by counsel.

For example, the Jahnke's suggest that the surgical procedures performed at Stormont Vail Hospital in April 2009 were merely diagnostic in nature. Blue Cross appropriately notes that the plaintiffs supply no competent evidence in support of this conjecture, but it is directly contrary to the allegations of their own Complaint, which states that Samuel Jahnke had been diagnosed with a brain tumor prior to the surgery.

The Jahnke's also cite telephone recordings of some conversations between members of the Jahnke family and Blue Cross representatives. These include a conversation from April of 2009, in which a Blue Cross representative stated that the Jahnke's claims would be duly processed, and a

conversation from the previous year, in which Kristel Jahnke spoke with a Blue Cross representative about the effect of switching from a business plan to one involving individual policies. The representative stated that such a switch would prevent Jahnke & Sons from guaranteeing coverage to new employees, and that "[y]ou do have to serve the 8 month waiting period though also" (Dkt. 17-8, at 15). The representative stated that this waiting period was "on certain conditions only though." (*Id.*) The Jahke's also raise questions about the exclusion for obstetrical services when one of the reasons for the new policy was to end coverage for such services, and note that Blue Cross actually paid some of the claims submitted by the family, or indicated "$0.00" in some hospital expense forms.

In its response, Blue Cross supplies evidence that it indeed paid some of the claims, but only to the extent that these were diagnostic in nature. It also, again correctly, notes that the scope of a policy issued by ERISA cannot be expanded by estoppel. *Palmer v. Metro. Life Ins. Co.*, No. 10-3171, 2011 WL 892747, at *7 (10th Cir. Mar. 16, 2011). Thus, it is the terms of the policy that are controlling, not the existence of alleged oral statements suggesting broader coverage. Even assuming ERISA were not applicable, the evidence as to the 2009 conversation is irrelevant, since an estoppel cannot arise in the absence of any reliance, and this conversation occurred after the surgery.

The 2008 policy does include a reference to the potential exclusive for obstetrical services within the waiting period, but this creates no ambiguity in the terms of the policy, or is it some anomaly reflecting suspicious circumstances. The policy also clearly stated that such obstetrical policies "are available upon request at an additional premium," and that they were subject to the waiting period "[i]f purchased." (*Id.* at 56) (emphasis added). Such coverage was not purchased. Finally, the insurance forms include a checkmark for "Rollover," but only as an indication that the new policies were renewal of an existing group policy, but a rollover of an existing group policy into new individual policies.

8

Finally, the court specifically finds that the expense forms plaintiffs cite lack probative value. As noted earlier, these forms were generated after the expenses were incurred, and thus cannot satisfy the reliance element of estoppel. Not only does such evidence fall short of the hyperbolic status assigned them by plaintiffs (Dkt. 36 at 18-19), the court finds such evidence — relating simply to an interim, computerized assessment of hospital patient charges or to hypothetical computer estimations of what Blue Cross *might* have paid if coverage were not denied — wholly irrelevant to plaintiff's claims, as they cannot not alter the specific right advanced in the policy which allows Blue Cross to conduct a direct and independent review of pre-service and post-service claims.

### *Conclusions of Law*

### *ERISA*

Blue Cross argues in its motion that the plaintiffs' claim is precluded by ERISA, and that the regulatory "safe harbor" exemption of 29 C.F.R. § 2510.3-1(j) does not apply. It also argues that the 2008 policy otherwise falls within the scope of ERISA, as an employee benefit plan. (Dkt. 17, at 11-17), and that since ERISA preempts state law under 29 U.S.C. § 1144(a), the plaintiffs' are asserting equitable claims for benefits under ERISA Section 504(a), which claims must fail, as the plaintiffs have failed to demonstrate that Blue Cross's decision to deny benefits was arbitrary and capricious.

The plaintiffs in their Response present only one substantial argument: that the safe harbor provision applies, thereby excluding the present action from the scope of ERISA. The plaintiffs do not persuasively argue that (1) in the absence of the safe harbor exception, ERISA does not otherwise govern the scope of the rights under the policy, (2) that, if ERISA applies, the case must be reviewed under an arbitrary and capricious standard, or (3) that Blue Cross's decision to deny the claim under the explicit terms of the policy was not arbitrary and capricious under all the circumstances of the case. *See Graham v. Hartford Life & Accident*, 589 F.3d 1345, 1358 (10th Cir. 2009).

The safe harbor of 29 C.F.R. § 2510.3-1(j) has four separate elements, all of which must be met before a plan may be considered to be excluded from ERISA.

(1)    No contributions are made by an employer or employee organization;

(2)    Participation [in] the program is completely voluntary for employees or members;

(3)    The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4)    The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

The dispute between the parties centers on the first element, whether contributions were made by the corporate employer, Jahnke & Sons.

Whether premium payments are made by the employer or the beneficiary is an inquiry driven by objective facts. *See Redeaux v. Southern Nat. Life Ins. Co*, No. 08-1345, 2008 WL 5427749, at *5 (W.D. La. Dec. 30, 2008) (discounting plaintiff's "self-serving affidavit stat[ing] her belief [expressed amid] unpersuasive conclusory statements," and finding ERISA preemption where all "certified documents entered into evidence" showed the safe harbor exception is applicable). On the other hand, the court is not limited to the mere form of payment. Thus, in *Schneider v. Provident Life & Accident*, No. 97-4646, 1999 WL 281206, *4 n. 7. (N.D. Cal. 1999), the court found that the safe harbor applied, even though the checks for the premium payments were issued to the insurer by the corporate employer, where other evidence showed that although the corporation issued the checks, the plaintiff had agreed that the cost of the premiums was charged to him as taxable income. *See also Roberts v. Principal Life* Ins., 2009 WL 691872 (E.D. Mich. March 12, 2009) (material question of fact existed as to intent of parties, where evidence insurer sent invoices to corporate address, and was paid by corporate checks, was balanced against plaintiff's evidence that payments were meant to repay independent loan advanced by the plaintiff to the corporation); *Schwartz v. Provident Life & Accident*, 280 F.Supp.2d 937, 941 (D.Ariz.2003) (although use of corporate billing and checks

are relevant for safe harbor analysis,"dispositive question is whether [the employer] actually absorb[s] any portion of the cost of those premiums"). Of particular relevance is how the beneficiary treated the premium payments on contemporary tax statements. *See Cowart v. Metropolitan Life Ins.*, 444 F.Supp.2d 1282, 1291 (M.D. Ga. 2006).

The court finds that a material issue of fact exists as to whether Jahnke & Sons made contributions on behalf of Samuel Jahnke's 2008 policy. The evidence shows that premiums for the plan were paid on checks in the name of the corporation, out of the corporate account. Despite plaintiffs' current position that the payments were made as distributions, the Jahnkes did not list such distributions separately in the W-2 forms. Moreover, the premium payments were made in a manner which divided equally among all the employee/shareholders, not in proportion to their actual shareholder interests. Against this, the plaintiffs have supplied evidence from their accountant indicating that he intended the premium payments as distributions, and that he indicated the payments on some individual tax schedules.

The court finds that Blue Cross has not established beyond a reasonable doubt that the premiums were paid by the corporate employer, given the affidavit and testimony supplied by the accountant. At the same time, the fact-finder is not compelled to accept the plaintiffs' characterization of the premium payments, given the relative absence of contemporary documentation that the parties intended distributions, the clear conflict with the plaintiffs' unequivocal responses to interrogatories which state that the corporation paid the premiums for the policy, and the fact that the evidence relating to the alleged distributions was identified on the wake of Blue Cross's summary judgment motion.

### *Kansas Law*

Blue Cross contends that, even if ERISA preemption did not exist, the 240-day waiting period was not contrary to Kansas law. K.S.A. 40-2209f(f), provides for a substantially shorter waiting period. Under K.S.A. 40-22209(a)(4)(A) and (a)(8)(A), "group policies" may include a 90

day "preexisting condition exclusion." However, Blue Cross argues that K.S.A. 40-2209 is not applicable for two reasons. First, the legislation by its terms is applicable only to group policies, and the 2008 policy issued to Samuel Jahnke was an individual policy. Second, the Kansas legislation was only intended to apply to exclusions for preexisting conditions, not waiting periods in the absence of a claim of a preexisting condition, citing Judge Kelly's decision in *Costello v. Travellers*, 1995 WL 643816 (D. Kan. Oct. 26, 1995).

The primary argument of the Jahnkes in their Response (Dkt. 24, at 12-15), and the only argument in their Surreply (Dkt. 36, at 1-21), is that ERISA does not apply because of the safe harbor provision. In their Response, they make a brief argument that ERISA does not preempt Kansas statutes governing small group policies. (Dkt. 24, at 15-17). But plaintiffs never directly respond to either of Blue Cross's arguments.

The court finds that Blue Cross's argument based on *Costello* is unconvincing. It is correct that in that case the court indicated (in dicta, the court previously holding that ERISA preemption applied) that the purpose of K.S.A. 40-2209f is to restrict the ability of medical insurers to prevent coverage of preexisting illness, but in doing so the court did not suggest that the facial language of the statute, which clearly restricts all waiting periods, should be ignored. The court explained that the plaintiff's state law claim was subject to dismissal for two reasons:

> Even assuming that Kansas law is not preempted by ERISA, there are two problems with this argument. First, the cited statutory restriction applies to pre-existing condition exclusions contained in *health* insurance policies. The insurance policy here provides not health insurance but *accident* insurance. K.S.A. 40-2209d(n) expressly exempts accident insurance policies from the coverage of the statute.
>
> Second, the case really does not involve the "pre-existing condition" frequently contained in medical insurance, because the present case is not about medical insurance. It is a claim for benefits under an accident policy. Charles Costello began to work for SRM, and was protected by the group accident insurance policy, in 1977. He was first diagnosed as suffering from heart disease in 1989, some 12 years later. Thus, this is not a case in which a health insurance provider is seeking to avoid coverage for a disease on the basis that the medical condition existed before the time coverage was first provided. Rather, this is a case in which the plaintiff seeks benefits for a disease-related death under an accident insurance policy which expressly excludes coverage for a disease, in which the disease was first detected after the policy was in effect.

12

1995 WL 643816 at *4 (emphasis in original).

Blue Cross's reliance on the penultimate sentence in the quoted passage is misplaced, as the court was clearly not suggesting that the plain language of the statute should be ignored. Rather, it was simply indicating the multiple reasons why Costello's specific claim fell outside the ambit of K.S.A. 40-2209f. The court finds no basis in *Costello* for concluding that the statute should not be applied according to its plain language.

However, the court agrees that the statute only governs group policies, and the policy in question was an individual policy. As noted earlier, the Jahnkes do not directly respond to this argument as a legal conclusion, they simply challenge the underlying fact, asserting in their response to Blue Cross's statement of uncontroverted facts that the 2008 policy was a group policy.

For the reasons identified in the court's Findings of Fact, the policy issued in 2008 was clearly an individual policy. K.S.A. 2209-(a)(1) defines "Group sickness and accident insurance" as "that form of sickness or accident insurance covering groups of persons." Typically, "a group insurance contract is embodied in [a] master policy [coupled with] individual certificates [that] are merely evidence of coverage." *Simms v. Metropolitan Life Ins.*, 9. Kan.App.2d 640, 644, 685 P.2d 321, 325 (1984) (*citing Boseman v. Insurance Co.*, 301 U.S. 196, 203).

The uncontroverted facts establish that group policies are not individually underwritten, but are based on underwriting assumptions pertaining to the general health of a group of people, and no individual person's health risk is evaluated. Major differences exist between individual and group policies, including the premiums charged. It is uncontroverted that the policy was issued as an individual policy and was priced as such. It is uncontroverted that, if the policy was issued as part of a group policy, it would have been priced differently.

This evidence is consistent with the decisions of the courts. *See United States v. Lorefice*, 192 F.3d 647 (7th Cir. 1999) (recognizing that risk assessment under group policies is made not on the basis of health risk of specific individuals, but on other grounds, such as employee status). *See also American Bar Endowment v. United States*, 4 Cl.Ct. 404, 416 n. 12 (1984) (noting differences

13

between practical and price differences between group and individual policies, including "the additional security and flexibility afforded by individual policies"), *aff'd in part and rev'd in part on other gds.*, 761 F.2d 1573 (Fed. Cir. 1985), *rev'd*, 477 U.S. 105 (1986).

The policy issued to Samuel which took effect on September 1, 2008 Jahnke was specifically issued in his name, and not issued as merely part of a general group policy. The policy was issued with the emphatic, large-font title:

**NON-GROUP DIRECT-ENROLLED CONTRACT**.

(Dkt. 17-4, at 6). The contract further specifies that the policy issued issued under the "NON-GROUP CATEGORY: HZ." (*Id.*)

As the Jahnkes stress (in the part of their brief where they are attempting to escape the application of ERISA), Samuel Jahnke paid for the policy individually, with his own funds, from disbursements from the corporation. The corporation, according to the plaintiffs, did not pay for the policy, Samuel Jahnke did, as an individual. *See Coates v. Metropolitan Life Ins.*, 515 F.Supp. 647, 649 (D.Kan. 1981) ("K.S.A. 40-2209 addresses the subject of 'group sickness and accident insurance'"); *Williams v. C.T. Life & Accident Ins.*, 303 F.Supp. 1208, 1211 (D.Kan. 1968) (noting that "[s]pecial rules are set out at K.S.A. 40-2209 regarding group sickness and accident insurance").

In their Petition, the plaintiffs advance two separate theories of relief. First, that Blue Cross violated K.S.A. 40-2209(a)(8), "which states that when small group insurance is terminated and a new group plan is issued[,] that the new policy must give credit for credibable coverage on the prior plan." (Dkt. 1, Exh. 1, at ¶ 12). Accordingly, the determination that the policy at issue was an individual rather than a group plan precludes the plaintiff's first claim.

The plaintiffs' second allegation in their Petition is that Blue Cross violated K.S.A. 40-2209[f](f), which "specifically provides for a ninety (90) day waiting period." (*Id.* at ¶ 23). However, a determination that the policy was an individual policy is not determinative of the K.S.A. 40-2209f claim. This provision is a part of more recent amendments to K.S.A. 40-2209 designed to promote access to insurance for small employers. Unlike 40-2209(a), which governs policies issued

14

"covering groups," the application of K.S.A. 40-2209(a) *et seq.* is potentially larger. K.S.A. 40-2209(e) specifically provides that the small employer provisions are applicable to "[*a*]*ny individual or group health benefit plan issued to a group.*"  (Emphasis added). By its express terms, the small employer provisions include individual plans as well as group plans. The focus is not on whether a policy was issued *for* a group in terms of *coverage*, but simply *to* a group otherwise authorized to supply coverage:

(a) Any individual or group health benefit plan issued to a group authorized by subsection (a) of K.S.A. 40-2209 and amendments thereto shall be subject to the provisions of this act if it provides health care benefits covering employees of a small employer and if it meets any one of the following conditions:

(1) Any portion of the premium is paid by a small employer, or any covered individual, whether through wage adjustments, reimbursement, withholding or otherwise;

(2) the health benefit plan is treated by the employer or any of the covered individuals as part of a plan or program for the purposes of section 106 or section 162 of the United States internal revenue code; or

(3) with the permission of the board, the carrier elects to renew or continue a health benefit plan covering employees of an employer who no longer meets the definition of a "small employer."

Any one of the three preconditions is sufficient, and the remaining question of material fact (whether the premiums for Samuel Jahnke were paid by him or by the corporation) is irrelevant under the first element. The small employer provisions are applicable if either Jahnke or the corporate employer paid "[a]ny portion of the premium."

In addition, the statute provides an exclusion for certain individual policies, but only where the separation from employment is absolute and unmistakable. Under subsection (d),

Individual policies of accident and sickness insurance issued to individuals and their dependents totally independent of any group, association or trust arrangement permitted under K.S.A. 40-2209 and amendments thereto shall not be subject to the provisions of this act.

Here, there is evidence from which a rational fact-finder could conclude that the Samuel Jahnke policy, even if it was individual in nature, was not "totally independent" of a group, but was instead issued to the small employer. As noted earlier, the policy denominates itself as "NON-

15

GROUP." But the policy was also prefaced by, and delivered to, Jahnke with the notation that is it was issued under the "GROUP NAME" of "SAMUEL R JAHNKE & SONS," with a specified "GROUP NUMBER." (Dkt. 17-4, at 4). Further, the facts also establish that Blue Cross sent premium notices to Jahnke & Sons, not Samuel Jahnke as an individual, and that Blue Cross engaged in communications with Kristel Jahnke as the "Group Leader."

Because the evidence fails to establish beyond a reasonable doubt that the Samuel Jahnke policy was issued totally independent of the small employer group, the court will not issue summary judgment as to Count 2 of the Petition.

*Conclusion*

The court accordingly finds (a) the rights between the parties are governed by the September 1, 2008 policy issued by Blue Cross to Samuel Jahnke; (b) provisional or hypothetical indications of potential coverage do not preclude Blue Cross from relying on express policy language in making its final decision to grant or deny coverage; (c) a material question of fact exists as to whether contributions for this policy were made by Samuel Jahnke individually, or by Jahnke & Sons as an employer; (d) if the payments were made by him individually, the safe harbor provision applies, and ERISA does not preempt the plaintiffs' claims (e) if, on the other hand, Janke & Sons contributed to the policy, the safe harbor provision is inapplicable and ERISA premption applies; (f) Blue Cross did not act arbitrarily or capriciously within the terms of ERISA in denying the claim; (g) Count 1 of the Petition will be dismissed, as the policy in question is an individual policy and is not subject to the terms of K.S.A. 40-2209, and (h) the court denies summary judgment as to Count 2 of the Petition.

IT IS ACCORDINGLY ORDERED this 28th day of September, 2011, that the defendant's Motion for Summary Judgment (Dkt. 16) is granted in part and denied in part, as stated herein; plaintiffs' Motion for Leave (Dkt. 40) is granted; defendant's Motion to Strike (Dkt. 37) is denied, although defendant's request for leave to file Exhibit 1 to its motion is hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

17